People of State of Illinois ex rel. Charles G. Cadell, Plaintiff-Appellee, v. Board of Fire and Police Commissioners of City of East St. Louis, Illinois, and Thomas E. Krebs, Treasurer of City of East St. Louis, Illinois, Defendants-Appellants.

Term No. 57–F–1.

Fourth District.

May 15, 1957.

Released for publication June 4, 1957.

Robert F. Godfrey, Corporation Counsel of City of East St. Louis, of East St. Louis, for defendants-appellants.

Melvin W. Trotier, of East St. Louis, for plaintiff-appellee.

JUDGE BARDENS delivered the opinion of the court.

The relator filed a petition for a writ of mandamus in the Circuit Court of St. Clair county to compel the defendant Board to have the position of "dispatcher" in the Fire Department placed under and made subject to the provisions of the Fire and Police Commissioners' Act. The case was submitted to the trial court on a stipulation of facts and the writ was granted. Defendant appeals, contending that such job classification may properly be filled by "civilian" employees appointed by the City Council. Sec. 14—4 of Chap. 24, Ill. Rev. Stat. provides as follows:

"The Board of Fire and Police Commissioners shall appoint all officers and members of the fire and police departments of the municipality, including the chief of police and the chief of the fire department unless the council or board of trustees shall by ordinance as to them otherwise provide; . . . All appointments to each department other than that of the lowest rank, however, shall be from the rank next below that to which the appointment is made, except that the chief of police and the chief of the fire department shall be appointed from among members of the police and fire departments, respectively, regardless of rank, unless the council or board of trustees shall have by ordinance as to them otherwise provided."

As we pointed out in People ex rel. Cadell v. Board of Fire and Police Commissioners, 345 Ill. App. 415, 103 N.E.2d 666:

"A careful reading of the whole Article 14 does not leave much doubt as to the objects and purposes sought to be obtained, viz.: to provide a method by which the

506

personnel of the fire and police departments of a city could be taken out of the realm of political patronage and given a tenure that depended upon merit in order to encourage the applications and retention of qualified persons for the said departments."

Among the job classifications functioning within the Fire Department and under the direction of the Fire Chief is that of "dispatcher." The stipulation of facts recites a variety of functions and activities of such job, all of which might properly be summarized under the heading "Communications." The dispatcher receives and relays calls on the location of fires, maintains constant contact by radio and an inter-communication system with the several station houses and radio equipped vehicles, and through such contact permits the coordination of fire fighting personnel and equipment throughout the city. In the past, physically handicapped or pensioned firemen filled the job and it is clear, from the stipulation, that fire fighting skill and experience are unnecessary to properly perform a dispatcher's duties.

■■ Both parties refer to Chap. 24, Sec. 12—1 in an attempt to give more concise meaning to the phrase "officers and members of the fire department" as used in Section 14—4. This section, being Article 12 of the Revised Cities and Villages Act, provides for a minimum salary for firemen in certain municipalities and defines firemen in Sec. 1 as follows:

"In this Article the word 'firemen' means any member of a regularly constituted fire department of a municipality appointed or commissioned to perform fire fighting duties and includes the fire chief, assistant fire chief, captain, engineer, driver, ladder man, hose man, pipe man and any other member of a regularly constituted fire department."

We note that the order of the lower court is primarily devoted to an interpretation of the meaning of the word "fireman" as used in this section though the petition for a writ of mandamus raises no such issue. A finding is also made pursuant to the prayer of the petition that the job of dispatcher falls within the provision of Art. 14, Sec. 4, which, we can agree, would logically follow from the lower court's interpretation including dispatchers under the minimum salary provision. We turn then to the related question of whether a dispatcher is properly a member of a regularly constituted fire department who performs fire fighting duties and is therefore covered by the minimum salary provision.

In The People v. City of Springfield, 370 Ill. 41, 19 N.E.2d 598, the Supreme Court upheld the constitutionality of Article 12 in the face of the charge, among others, that it was special or class legislation in contravention of Section 22 of Article 4 of the Constitution. The rationale proceeded as follows: fire protection is a matter of general public concern, because of the special hazards inherent in fire fighting, a guarantee of reasonable living conditions is necessary to attract men to such pursuit; therefore, a minimum salary for men engaged in the hazardous occupation of fire fighting is within the proper exercise of the police power. Further, the classification of minimum salaries in accordance with the size of the city is justified constitutionally because of the increased hazards of fire fighting in larger population centers. It is clear, therefore, that the validity of such special legislation proceeds from a recognition that firemen, as the word is therein used, are subjected to special and unusual risks in the course of their occupation. Admittedly, a dispatcher's functions involve no such hazards, being primarily concerned with communications. To include such job classification under the minimum salary provision would be to logically delete

508

the phrase "appointed or commissioned to perform fire fighting duties," as used therein, and to ignore the significance of special occupational hazards relied on by the Supreme Court in validating such legislation. We conclude, therefore, that a dispatcher is not covered by Article 12.

Under Article 14, there is no definition of the phrase "officers and members of the fire department." It is true, as the relator contends, that functionally the dispatcher is an integral member of the fire department in this particular instance. It is also true, however, that such job need not be so limited. A central communications center might be established to maintain necessary contact with various vital municipal departments of government, including the fire department. The activities of a dispatcher are not peculiar to the fire department alone; it is a job classification of wider scope and application.

Looking at the issue from the language of the statute, Article 14, Sec. 4, we observe the statute says that appointments within the fire department shall be from the next lower rank. Implicit in such language is the assumption that all appointees to the lowest rank should have the potential ability to advance through the ranks to the top jobs of fire fighting since appointment to such jobs is limited to men within the department. It therefore would seem to have been the intention of the legislature to limit the application of Art. 14, Sec. 4 to those who are employed in the first instance to actively fight fires. The attributes required of such an employee are substantially different from those necessary to the performance of the job of dispatcher. This is evident from the use of physically handicapped firemen as dispatchers in previous years.

There are also provisions in Sec. 6 of Article 14 which are inconsistent with relator's contention that dispatchers are members of the fire department subject to the jurisdiction of the defendant Board. For ex-

509

ample, the requirements that job applicants be under 35 years of age and be subject to examination which tests their physical qualifications and health, bear no logical relation to a person's ability to fill the job of dispatcher. Such standards are, however, relevant to a person's ability to perform the more arduous job of fighting fires.

We conclude, therefore, that the clear public policy of giving tenure based on merit to the job of fire-fighting does not require that the job of dispatcher be placed under the jurisdiction of the Board of Fire and Police Commissioners.

The order of the trial court is, therefore, reversed.

Reversed.

SCHEINEMAN, P. J. and CULBERTSON, J., concur.