THE PEOPLE *ex rel.* EDWARD PETKA, State's Attorney of Will County, Plaintiff-Appellee, *v.* JAMES D. BINGLE, Will County Board Member, Defendant-Appellant.

Third District   No. 82—228

Opinion filed February 16, 1983.

Robert C. Condon, of Concon & Bruggeman, of New Lenox, for appellant.

Scott Nemanich and Randal J. Miller, Assistant State's Attorneys, of Joliet, for appellee.

JUSTICE ALLOY delivered the opinion of the court:

Defendant James D. Bingle appeals from the decision of the circuit court, in this *quo warranto* proceeding, wherein the court ousted Bingle from his office as Will County Board member. The *quo warranto* action had been brought by the Will County State's Attorney against Bingle, who, at the time of the action, held positions as county board member and as Du Page Township assessor, having been elected to both offices. The proceeding was originally brought on the basis of a common law incompatibility between the two offices, but the amended complaint relied upon Public Act 82—554, amending section 2 of "An Act in relation to the simultaneous tenure of certain public officers" (Ill. Rev. Stat. 1981, ch. 102, par. 4.11), which declared it unlawful for one person to simultaneously hold the offices of township assessor and county board member in one county. The circuit court, in entering summary judgment for the county, found that Bingle held both offices, in violation of Public Act 82—554. The court ordered that Bingle be ousted from his position as county board member, and it declared that office vacant. Judgment of ouster was stayed, however, pending appeal.

On appeal, the defendant Bingle argues that the court erred in entering summary judgment against him and in ousting him from his po-

sition as county board member. He argues: (1) that the legislature, in enacting Public Act 82—554, unconstitutionally changed the qualifications for a constitutional office, county board member; (2) that even assuming the constitutionality of the Act, the court erred in applying it to the defendant, where, as here, he held both offices prior to the effective date of the Act and no retrospective application was specified by the legislature; (3) that the court's decision interfered with the absolute right of the electorate to elect any person not disqualified by the constitution; and (4) that the court's decision damages the public interest and constitutes an abuse of discretion.

The facts, as disclosed in the record, are undisputed. James Bingle was elected to the Will County Board on November 7, 1978, being sworn in on December 4, 1978. He thereafter assumed his seat on the county board. On April 7, 1981, he was elected to the office of assessor for Du Page Township, Will County, Illinois. On May 4, 1981, he was sworn in to that office. At the time of his election and swearing in as assessor, there was no statutory prohibition in Illinois against one person simultaneously holding the offices of county board member and township assessor.

On July 28, 1981, the Will County State's Attorney, on the basis of an Illinois Attorney General's Opinion (Ill. Att'y Gen. Op. No. 81—021 (July 23, 1981)), requested Bingle's resignation from the county board. The opinion of the Attorney General had concluded that the offices of county board member and township assessor were incompatible under the common law, and therefore, acceptance of the second office constituted an *ipso facto* resignation from the first. Thereafter, on August 3, 1981, the State's Attorney filed a complaint in the nature of *quo warranto*, praying for a judgment of ouster against Bingle as county board member. Then, on September 17, 1981, the Governor of the State of Illinois signed into law Public Act 82—554, which specifically provided that it was unlawful for one person to hold the office of elected county board member and elected township assessor at the same time. On the basis of the incompatibility of the two offices, and supported by the newly enacted Public Act 82—554, the county moved for summary judgment. The motion was granted by the circuit court, which found that the two offices held by Bingle were incompatible under the recently enacted statutory provision. The court then ordered that Bingle be ousted from his position as county board member. From entry of that summary judgment, Bingle appeals.

Appellant Bingle argues that Public Act 82—554 is unconstitutional in that through it the legislature has attempted to add a qualification to the office of county board member, which is a constitutional

office. (Ill. Const. 1970, art. VII, sec. 3(a).) It is established that where the constitution declares the qualifications for an office, it is not within the power of the legislature to change or modify the qualifications, unless such amendatory power is granted in the constitution. (*People ex rel. Hoyne v. McCormick* (1914), 261 Ill. 413, 420-24, 103 N.E. 1053; *People ex rel. Nachman v. Carpentier* (1964), 30 Ill. 2d 475, 197 N.E.2d 32.) The county responds to this argument, asserting (1) that Public Act 82—554 did not add any additional qualification to the office of county board member, but merely prohibited persons from holding that office and the office of township supervisor (*Livingston v. Ogilvie* (1969), 43 Ill. 2d 9, 14, 250 N.E.2d 138), and (2) that Public Act 82—554 did not change the law, but was merely declaratory of the existing common law rule prohibiting the holding of incompatible public offices. (See *People ex rel. Myers v. Haas* (1908), 145 Ill. App. 283, 286.) The existence of a common law prohibition against holding both offices is also argued as a response to Bingle's contention that Public Act 82—554 was improperly applied retrospectively to him. Therefore, to the question of the existence of any common law incompatibility we now turn.

The appellate court, in the *Haas* case, concisely stated the rules with respect to incompatibility:

> "Incompatibility, in this connection [the holding of two public offices], is present when the written law of a state specifically prohibits the occupant of either one of the offices in question from holding the other and, also, where the duties of either office are such that the holder of the office cannot in every instance, properly and fully, faithfully perform all the duties of the other office. This incompatibility may arise from multiplicity of business in the one office or the other, considerations of public policy or otherwise. Bacon's Abridgement Vol. 7, Tit. 'Officers', K.; Rex v. Tizzard, 9 B. & C., 418; 1 Dillon on Mun. Corp., p. 308-9, secs. 225—7 and note 4; McCrary on Elec., secs. 336 *et seq.* 4th Ed.; Mechem on Pub. Off., sec. 429; Dickson v. People, 17 Ill. 191; People *ex rel* v. Hanifan, 96 Ill. 420; Packingham v. Harper, 66 Ill. App. 96. From these authorities it also appears that in case of incompatibility the acceptance of the second office is *ipso facto* a resignation of the first office. By his own action the officer expresses his voluntary resignation." (145 Ill. App. 283, 286-87.)

The common law prohibition against public officers holding two incompatible offices at the same time is of long standing, and well-established origin. (See 63 Am. Jur. 2d *Public Officers and Employees*

secs. 62, 73, 77 (1972); Annot., 89 A.L.R.2d 632 (1963).) Incompatibility, under the common law,

"*** is to be found in the character of the offices and their relation to each other, in the subordination of the one to the other, and in the nature of the duties and functions which attach to them.

Incompatibility of offices exists where there is a conflict in the duties of the offices, so that the performance of the duties of the one interferes with the performance of the duties of the other. They are generally considered incompatible where such duties and functions are inherently inconsistent and repugnant, so that because of the contrariety and antagonism which would result from the attempt of one person to discharge faithfully, impartially, and efficiently the duties of both offices, considerations of public policy render it improper for an incumbent to retain both.

At common law, it is not an essential element of incompatibility of offices that the clash of duty should exist in all or in the greater part of the official functions. If one office is superior to the other in some of its principal or important duties, so that the exercise of such duties may conflict, to the public detriment, with the exercise of other important duties in the subordinate office, then the offices are incompatible. ***." (63 Am. Jur. 2d *Public Officers and Employees* sec. 73 (1972).)

The question of subordination of offices is relevant in the instant case, and pertinent thereto:

"One of the most important tests as to whether offices are incompatible is found in the principle that the incompatibility is recognized whenever one is subordinate to the other in some of its important and principal duties, and subject in some degree to the other's revisory power. Thus, two offices are incompatible where the incumbent of the one has the power of appointment to the other office or the power to remove its incumbent, even though the contingency on which the power may be exercised is remote." (63 Am. Jur. 2d *Public Officers and Employees* sec. 74 (1972).)

In support of its argument that the offices of county board member and township assessor were incompatible at common law, the county notes that a county board member has authority to act on the appointment of the supervisor of assessments (Ill. Rev. Stat. 1979, ch. 120, par. 484a) and on the salary and budget of the supervisor of assessments (Ill. Rev. Stat. 1979, ch. 120, par. 484b). It is then noted

that the supervisor of assessments, in turn, has some supervisory authority over township assessors (Ill. Rev. Stat. 1979, ch. 120, par. 483), and is the principal person responsible for overseeing the assessment of property in the county. (Ill. Rev. Stat. 1979, ch. 120, pars. 522, 523, 582, 584.) In the exercise of his authority, the supervisor has the power to change assessments made by a township assessor. (Ill. Rev. Stat. 1979, ch. 120, pars. 484b, 576.) The county also notes, in urging incompatibility between a board member and township assessor, that a board member has authority to act on appointments to the board of review, which hears appeals on property assessments, with power to change any assessment. Ill. Rev. Stat. 1979, ch. 120, pars. 489, 589.

■ It is important to emphasize that the common law rule of incompatibility, in its subordination aspect, focuses upon two offices, held by the same person, where one of those offices is subordinate to the other in some important and principal duties, and subject to the other's revisory power. In the instant case, there is no indication that Bingle, as a county board member, has duties similar to those imposed on him by virtue of his holding the office of township assessor. The duties of the two offices do not overlap. Nor does a county board member have supervisory authority over a township assessor. The county, in its arguments, has focused primarily upon an incompatibility between the office of county board member and the office of supervisor of assessments. Bingle was not a holder of those two offices. The county, however, attempts to stretch the alleged incompatibility of offices to include the office of township assessor, by virtue of the assessor's subordination to the supervisor of assessments. We find the incompatibility too attenuated. The focus of the incompatibility inquiry, essentially, is upon the duties of the two offices which are held by the same person. Herein, we find no inherent inconsistency or repugnancy between the duties and functions of a township assessor and those of a county board member. They operate in different spheres and there is no overlap in duty or authority. Nor do we perceive a serious potential for conflicting interests in the exercise of the duties of the offices. We find no common law incompatibility between the office of county board member and the office of township assessor.

The county suggests the possibility of undue influence by a board member, who is also a township assessor, over the supervisor of assessments, in urging a contrary result. It also asserts that permitting such dual office holding poses a threat to the entire statutory supervisory scheme for the assessment process. In assessing such concerns,

it is useful to examine an individual county board member's duties, vis-a-vis the supervisor of assessments. A supervisor must possess the statutory qualifications and must pass a test administered by the Department of Local Governmental Affairs. Only the top three scorers on the test shall be eligible for appointment to the position. (Ill. Rev. Stat. 1979, ch. 120, par. 484a.) Furthermore, the appointment of a supervisor, in counties of less than 1,000,000 inhabitants and not having an elected board of supervisors, is made by the presiding officer of the county board, "with the advice and consent of the county board." (Ill. Rev. Stat. 1979, ch. 120, par. 484a.) We find no inherent conflict between an individual board member's duty with respect to advising and consenting to the chairman's choice for supervisor, and the same person's duty as a township assessor, in assessing township property. Nor do we find in this "advise and consent duty" such a potential for undue influence as would thereby disqualify the board member from serving as township assessor. So far as removal of the supervisor, prior to November 1981 amendments, there was no provision for removal of an assessor by the county board. A supervisor of assessments, whom the chairman did not wish to reappoint, could obtain a hearing on the basis for his lack of reappointment before the full board. However, in *Macaluso v. West* (1976), 40 Ill. App. 3d 392, 352 N.E.2d 382, it was held that the county board had no power to remove or suspend a supervisor of assessments. After the November 1981 amendments, the county board, by a vote of two-thirds of its members, had the power to dismiss a supervisor for "misfeasance, malfeasance or nonfeasance in the performance of the duties of his office." (Ill. Rev. Stat. 1981, ch. 120, par. 484a.) In either situation, the influence of any one board member, who is not the chairman, is minimal. As Bingle notes herein, he was one of 27 board members. Similarly, the budget and salary of the supervisor are set within statutory limitations, and an individual board member's influence thereon would be minimal.

In short, we are simply unable to find in the duties and authority of the offices herein held by defendant Bingle any inherent antagonism or repugnancy such that his exercise of them would impermissibly conflict. As to the suggested undue influence potential, based upon the intermediary position of the supervisor, we find it not significant enough to conclude that the offices of township assessor and board member are incompatible. We note, too, that such potential is always present, to some degree, in the public sector, and the argument could be made that a board member, as an owner of tax-paying real estate, might use his position to unduly influence a supervisor in

his assessments. The statutory scheme for assessments is elaborate, and tightly drawn, with a variety of appellate procedures designed to ensure multileveled review over any individual assessment.

●■ ■ We find no significant subordination of the two offices held by Bingle, and no basis for concluding that the performance of the duties of the two offices were in conflict or interfere with each other. We find that the county has failed to show that Bingle cannot faithfully, properly and fully perform the duties of the two offices. We find no common law incompatibility. In so doing, we reject the county's assertion that Public Act 82—554 did not change the law in existence prior to its passage, but was merely declaratory of the existing common law. There was a change in the law effected by that Act. By its clear terms, Public Act 82—554 established that it was unlawful for a person to hold both the position of county board member and township assessor. However, just as clearly, that did not become the law in Illinois until September 17, 1981. Bingle was elected to the county board in November 1978, taking office in December 1978. He was elected township assessor in April 1981, taking the oath of office in May 1981, which oath was sufficient to constitute a *user* of the office and its assumption. (*People v. Callaghan* (1876), 83 Ill. 128, 134-36.) Therefore, Bingle, prior to the time of the effectiveness of Public Act 82—554, had assumed both offices. It is an elementary proposition of statutory construction that a law will not be given retrospective application, unless it is clear from the legislation itself that the legislature intended for it to receive such application. (*Zimmerman Brush Co. v. Fair Employment Practices Com.* (1980), 82 Ill. 2d 99, 411 N.E.2d 277; *United States Steel Credit Union v. Knight* (1965), 32 Ill. 2d 138, 141-42, 204 N.E.2d 4.) Bingle was elected prior to the effectiveness of the act making his dual office holding unlawful, and there is nothing in the act indicating the legislature's intention to make its application retrospective. To apply the act to him would attach a prohibition to the offices to which he was duly and properly elected before its enactment and would also work a disenfranchisement of the voters electing him. The application of the act to him works an impermissible retroactive application where none is called for in the act.

The county's argument against this finding is their contention that the law was merely declaratory of the existing common law incompatibility of the two offices, an argument we have already disposed of previously in the opinion.

Having concluded that there was no common law prohibition against Bingle's holding of the two offices, and having concluded that the only other basis for ousting him, that is Public Act 82—554, did

not apply because of its prospective application after September 17, 1981, we need not reach the constitutional issues raised or any other issue.

The action of the circuit court of Will County is reversed, and for the reasons stated, we find that the defendant Bingle was entitled to serve out the remainder of the terms of the two offices.

Reversed.

STOUDER and SCOTT, JJ., concur.